## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 1:13 CV 1455** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **$526,695.24 SEIZED FROM JP MORGAN** | ) | |
| **CHASE BANK INVESTMENT ACCT** | ) | **MEMORANDUM OPINION** |
| **#74068415, et al.,** | ) | **AND ORDER** |
| | ) | |
| **Defendants.** | ) | |

This matter is before the Court on the Motion to Strike Claims of Osama Salouha and

HYS Health Mart, Inc., d/b/a Medicine Center Pharmacy Pursuant to the Fugitive Distentitlement

Statute, filed by the United States on March 24, 2015. (Docket #121.)  The United States'

Motion replaces a Motion to Strike previously filed on September 18, 2014. (Docket #85.)  At a

status conference held on April 22, 2015, the Court noted that any additional opposition to

Docket #121 was to be filed by April 23, 2015, and any reply by April 30, 2015.  No briefs were

submitted.  However, the Court will consider the arguments raised by Osama Salouha and HYS

Health Mart, Inc., d/b/a Medicine Center Pharmacy ("Health Mart"), in their prior Opposition

Briefs.  (Docket #s 90 and 93.)

### Factual and Procedural Background

A Complaint in Forfeiture was filed in the above captioned matter on July 3, 2013. (Docket #1.)  On August 5, 2013, Osama Salouha, his wife Samah Salouha, and Health Mart, filed Verified Claims as to numerous assets listed in the Complaint.  (Docket #s 41, 42 and 43.) The Verified Claims were later amended on August 16, 2013.  (Docket #s 50, 51 and 52.)  On August 14, 2013, the United States moved to stay this case due to a related and ongoing criminal investigation.  (Docket #48.)  The case was ultimately stayed until May 23, 2013.  (Docket #66.) A case management conference was scheduled for June 24, 2014 and, although ordered to appear, the Salouhas failed to do so.  (Docket #67.)

On June 3, 2014, the Grand Jury returned a 53-count Indictment in U.S. v. Osama Hassan Salouha, et al., Case No. 1:14 CR 196, charging Mr. Salouha, Mrs. Salouha, and Sbeih Sbeih with numerous offenses.  Search and seizure warrants were executed on May 12, 2013 and, three days later, Mr. Salouha and Mrs. Salouha (who was eight months pregnant) withdrew their children from school and left the United States.  The Salouhas told neighbors they were traveling to Florida.  However, they traveled to Amman, Jordan, with round trip airline tickets indicating a return date of May 27, 2013.  Mr. Salouha has never returned.

The Salouhas subsequently offered various explanations for leaving the United States following the search and seizure, claiming first that Mr. Salouha traveled to Jordan in order to visit his sick father, taking his wife and children with him because his wife was 8 months pregnant and he didn't want to leave her alone, and later asserted that the family left the United States and traveled to Jordan because they had no means to support themselves after the DEA Seizure.  (Docket #121 at p. 5-6.)  As for the failure to return, the Salouhas initially asserted that

-2-

Mrs. Salouha's pregnancy and impending birth in June prevented their return, and later argued that it was too dangerous for their family to leave the war-torn Middle East. (Id.) Despite the foregoing, during the same time period, Counsel for the Salouhas informed the United States that a global resolution of all pending legal matters would trigger Mr. Salouha's return and sent an e-mail on May 23, 2014, with a Plea Proposal on May 23, 2014, indicating that a resolution would result in Mr. Salouha's "immediate return to the United States." (Id.)

On June 17, 2014, the Salouhas requested that a case management conference scheduled for June 24, 2014 be continued, asserting that Israeli-imposed travel restrictions on Gaza would make it very difficult to return to the United States. (Docket #71.) The request was denied and the Salouhas were ordered to participate in the case management conference by phone, but failed to do so. With the assistance of the U.S. Department of State, the United States then helped facilitate the Salouhas' safe departure from Gaza. On February 24, 2015, the Department of State notified the United States that all seven of the Salouhas had been taken by bus to Amman, Jordan. On February 27, 2015, the Department of State advised that it was holding the Salouhas' passports until an itinerary for their return to the United States was received. On March 1, 2015, the Department of State received the itinerary for all seven family members, including Mr. Salouha, and their passports were returned.

On March 3, 2015, Mrs. Salouha returned to the United States with the children. On March 5, 2015, the Department of State received information that Mr. Salouha departed Jordan on March 3, 2015, en route to Egypt, traveling on his Palestinian passport.

### Discussion

Under the fugitive disentitlement doctrine, a fugitive in a criminal case cannot maintain a claim in a related civil forfeiture action. The doctrine of disentitlement "is grounded on the

-3-

impropriety of permitting a fugitive to pursue a claim in federal court where he might accrue a benefit, while at the same time avoiding an action of the same court that might sanction him." *United States v. Eng*, 951 F.2d 461, 465 (2ⁿᵈ Cir. 1991). The doctrine applies not only to those who flee the jurisdiction of the United States, but also to those who decline to "enter or reenter" the United States to avoid criminal prosecution. 28 U.S.C. § 2466(a)(1)(B); *United States v. Collazos*, 368 F.3d 190, 198-99 (2ⁿᵈ Cir. 2004).

The fugitive disentitlement statute, 28 U.S.C. § 2466, provides as follows:

§ 2466. Fugitive disentitlement

(a) A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person–

(1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution–

(A) purposely leaves the jurisdiction of the United States;

(B) declines to enter or reenter the United States to submit to its jurisdiction; or

(C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and

(2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

(b) Subsection (a) may be applied to a claim filed by a corporation if any majority shareholder, or individual filing the claim on behalf of the corporation is a person to whom subsection (a) applies.

In *United States v. Salti*, 579 F.3d 656, 663 (6ᵗʰ Cir. 2009), the Sixth Circuit adopted the following five-part test used by the Second Circuit in determining whether the fugitive disentitlement statute applies:

(1) a warrant or similar process must have been issued in a criminal case for the

claimant's apprehension; (2) the claimant must have had notice or knowledge of the warrant; (3) the criminal case must be related to the forfeiture action; (4) the claimant must not be confined or otherwise held in custody in another jurisdiction; and (5) the claimant must have deliberately avoided prosecution by (A) purposefully leaving the United States, (B) declining to enter or reenter the United States, or (C) otherwise evading the jurisdiction of a court in the United States in which a criminal case is pending against the claimant.

*Id.* at 663 (quoting *Collazos*, 368 F.3d at198).  The fugitive disentitlement statute extends to corporations if "any majority shareholder" is a fugitive.  28 U.S.C. § 2466(b).  "The ultimate decision whether to order disentitlement in a particular case rests in the sound discretion of the district court."  *Collazos*, 368 F.3d at 198.

The fifth element of the test developed by the Second Circuit in *Colazzos*, as it applies to Mr. Salouha, requires the United States to prove that Mr. Salouha deliberately seeks to avoid prosecution by declining to reenter the United States.  In 2014, the Second Circuit in *United States v. Technodyne, LLC*, 753 F.3d 368, 383 (2nd Cir. 2014), clarified the fifth element, stating that while "the 'in order to' provision requires proof of a particular intent, we disagree that the intent must be proved to be the sole, principal, or dominant intent."  *Technodyne,* 753 F.3d at 383.  The Second Circuit noted its agreement with the Ninth Circuit in *United States v. $671,160.00 in U.S. Currency*, 730 F.3d 1051 (9th Cir. 2013), in which the Court stated as follows:

> The existence of other factors that might have also motivated [the claimant] to remain abroad, such as his Canadian citizenship and residency, does not undermine or foreclose the district court's finding that [the claimant] made a conscious choice to not "enter or reenter the United States" in order to avoid criminal prosecution. 28 U.S.C. § 2466(a)(1)(B). [The claimant's] desire to evade criminal prosecution need not be the sole motivating factor causing him to remain abroad, to the exclusion of all others.

730 F.3d at 1056, n.2 (emphasis added).  Thus, the existence of several reasons for declining to reenter does not preclude a finding that Mr. Salouha has made a conscious choice not to reenter

-5-

the United States in order to avoid criminal prosecution. Whether Mr. Salouha deliberately seeks to avoid prosecution must be assessed in light of "the totality of the circumstances." *See Technodyne*, 753 F.3d at 384; *United States v. One Parcel of Real Property Located at 66 Branch Creek Drive, Jackson, Tennessee*, 2014 U.S. Dist. LEXIS 162399 (W.D. Tenn. 2014) (citing *Collazos*, 368 F.3d at 201).

The United States moves the Court to strike the Verified Claim/Amended Verified Claim of Mr. Salouha in this case (Docket # 41 as amended by Docket #51), asserting that an arrest warrant has been issued for Mr. Salouha in the related criminal case; that Mr. Salouha has knowledge of the arrest warrant; that the charges in the criminal case and the allegations set forth in this civil forfeiture action are based on the same facts, investigation and circumstances and that the assets in the forfeiture allegation of the criminal indictment and the defendants in the civil forfeiture action are the same and, therefore, are related; that Mr. Salouha is not confined or otherwise held in custody in another jurisdiction; and, that Mr. Salouha is deliberately refusing to reenter the United States for prosecution and otherwise evading the jurisdiction of the District Court. (Docket #130 at pp.6-7.) The United States argues that the Verified Claim/Amended Verified Claim filed by Health Mart (Docket #42 as amended by Docket # 50) should also be stricken, as Mr. Salouha is Health Mart's "President and 100% owner."

Mr. Salouha and Health Mart argue that although the Salouhas traveled to Gaza after the search warrants were executed, there were no pending criminal charges against them at that time, the forfeiture complaint had not been filed and, they still had their passports. (Docket #90 at p. 6.) The Salouhas argue that they purchased a round-trip ticket to Jordan, demonstrating their intent to return, but that Mr. Salouha's father was in poor health; Mrs. Salouha was about

to deliver a baby; and, ongoing violence and the inability to obtain permission from the Palestinian Authority to leave, left them no other option but to remain in Gaza. (Id.) As stated above, the issues regarding the inability to leave Gaza (presented in their Brief in Opposition (Docket #90) and supplement thereto (Docket #93)) have since been resolved and the entire Salouha family left Gaza. While Mrs. Salouha ultimately returned to the United States alone with all five children, Mr. Salouha traveled to Egypt and has not returned.

Based on the totality of the circumstances, as related by Counsel during the numerous Status Conferences held in this case, briefed repeatedly by the Parties, and set forth above, the Court finds that Mr. Salouha has made a conscious choice not to reenter the United States for the purpose of avoiding prosecution. See *U.S. v. Technodyne LLC*, 753 F.3d 368, 383 (2nd Cir. 2014). Further, according to the Verified Claim/Amended Verified Claim filed by Health Mart, Mr. Salouha is its "President and 100% owner." Thus, the disentitlement doctrine applies to strike Health Mart's claim as well. 28 U.S.C. § 2466(b). Accordingly, the Motion to Strike Claims of Osama Salouha and HYS Health Mart, Inc., d/b/a Medicine Center Pharmacy Pursuant to the Fugitive Distentitlement Statute, filed by the United States on March 24, 2015, is hereby GRANTED. (Docket #121.)

## Conclusion

For the foregoing reasons, the Motion to Strike Claims of Osama Salouha and HYS Health Mart, Inc., d/b/a Medicine Center Pharmacy Pursuant to the Fugitive Distentitlement Statute, filed by the United States on March 24, 2015 (Docket #121), is hereby GRANTED.

The Verified Claims filed by Osama Salouha and HYS Health Mart, Inc., d/b/a Medicine Center Pharmacy (Docket #s 41 and 42, as amended by Docket #s 50 and 51) are

hereby STRICKEN.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: _May 12, 2015_