IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:13 CV 1455 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| $525,695.24 SEIZED FROM JP MORGAN | ) | |
| CHASE BANK INVESTMENT ACCT | ) | |
| #74068415, et al., | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendants. | ) | |

This matter is before the Court following the August 23, 2017 decision of the Sixth Circuit Court of Appeals vacating this Court's Order (Docket #145) granting the Government's Motion to Strike Claims Pursuant to the Fugitive Disentitlement Statute as to Sbeih Sbeih ("Mr. Sbeih") (Docket #130) and remanding this action for further proceedings.

I.  **Factual and Procedural Background.**

As set forth by the Sixth Circuit, the background of this case is as follows:

> On June 3, 2013, the government filed a civil in rem forfeiture complaint against twenty bank accounts, two real properties, three vehicles, and $91,500 in United States currency. This civil forfeiture action is related to the government's investigation of Sbeih and Osama Salouha, a claimant in a related case. Salouha is alleged to have illegally sold prescription drugs, including oxycodone, oxymorphone, and hydrocodone, through the two pharmacies he owns in Ohio, in violation of 21 U.S.C. § 841. Sbeih was a joint owner in one of Salouha's

pharmacies, and together Sbeih and Salouha are alleged to have laundered the receipts from Salouha's illegal drug sales through their personal and business accounts, in violation of 18 U.S.C. § 1956.

The government sought forfeiture pursuant to 21 U.S.C. § 881(a)(4), (a)(6), and (a)(7), as well as 18 U.S.C. § 981, as the bank accounts contained proceeds from drug trafficking activities, were used to facilitate drug trafficking, or were involved in money laundering. On August 7, 2013, Sbeih and his wife, Nimeh Ahmad-Sbeih, filed verified claims to seven of the personal bank accounts held in one or both of their names. The case was then stayed for a year because of the related criminal investigation. Sbeih was indicted on June 3, 2014, on one count of conspiracy to commit money laundering, one count of conspiracy to defraud the Internal Revenue Service, and three counts of making and subscribing false income tax returns. When Sbeih failed to appear for his arraignment on his criminal charges, the district court issued a warrant for his arrest.

Meanwhile, the district court lifted the stay on the civil forfeiture case and scheduled a status conference for June 24, 2014. Sbeih's counsel sought the district court's permission for Sbeih not to attend the conference in person, as he was in Israel. Sbeih alleged that he was in danger of losing his Jerusalem permanent residency permit if he left Israel. The district court granted the motion, excusing Sbeih.

On September 18, 2014, the government filed a motion to strike Sbeih's claim pursuant to the fugitive disentitlement statute. Sbeih opposed that motion. The district court did not immediately rule on the issue and instead waited to see whether the Salouhas, Sbeih's codefendants in the criminal case, were able to reenter the country, as they were reportedly stuck in Gaza. On April 10, 2015, the government refiled its motion to strike Sbeih's claims pursuant to the fugitive disentitlement statute. After receiving a response from Sbeih, the district court granted the government's motion to strike Sbeih's claim on May 12, 2015.

The Memorandum Opinion issued by this Court on May 12, 2015, reads, in part, as follows:

Based on the totality of the circumstances, as related by Counsel during the numerous Status Conferences held in this case and briefed repeatedly by the Parties, the Court finds that Mr. Sbeih has made a conscious choice not to reenter the United States for the purpose of avoiding prosecution. Mr. Sbeih is not prohibited from leaving Israel; is not detained in Israel; and, has presented no evidence that he is somehow incapacitated or otherwise unable to travel. Mr.

-2-

Sbeih's wife has returned to the United States and, although Mr. Sbeih argues he must stay in Jerusalem to care for his parents, Mr. Sbeih has indicated he has siblings who remain in Jerusalem. Prior to 2008, Mr. Sbeih traveled to Jerusalem only every two or three years and, in 2011, during the pendency of legal proceedings regarding his residency, Mr. Sbeih did in fact seek (through his attorney) and receive (from the Ministry of the Interior with the assistance of the United States Consulate) permission to travel to the United States for four months. However, he now chooses not to return to the United States in the face of the pending criminal case. Mr. Sbeih shall not [be] permitted to pursue a claim in this civil forfeiture action, while at the same time purposefully avoiding the criminal case pending against him.

II.     **Applicable Statutory and Case Law; Decision on Appeal.**

The fugitive disentitlement statute, codified at 28 U.S.C. § 2466, states as follows:

> (a) A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person—
>
>> (1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution—
>>
>>> (A) purposely leaves the jurisdiction of the United States;
>>>
>>> (B) declines to enter or reenter the United States to submit to its jurisdiction; or
>>>
>>> (C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and
>>
>> (2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

The Sixth Circuit has adopted the following five part test to determine whether disentitlement is appropriate:

> (1) a warrant or similar process must have been issued in a criminal case for the claimant's apprehension; (2) the claimant must have had notice or knowledge of the warrant; (3) the criminal case must be related to the forfeiture action; (4) the claimant must not be confined or otherwise held in custody in another

-3-

jurisdiction; and (5) the claimant must have deliberately avoided prosecution by (A) purposefully leaving the United States, (B) declining to enter or reenter the United States, or (C) otherwise evading the jurisdiction of a court in the United States in which a criminal case is pending against the claimant.

*United States v. Salti*, 579 F.3d 656, 663 (quoting *Collazos v. United States*, 368 F.3d 190, 198 (6th Cir. 2009)).

On appeal, Mr. Sbeih challenged the applicability of the fifth factor – whether he deliberately avoided prosecution by declining to reenter the United States – arguing that he remained in Israel not to evade criminal prosecution, but to avoid losing permanent resident status in Jerusalem. Mr. Sbeih argued on appeal that this Court incorrectly concluded that evading criminal prosecution did not have to be the sole purpose of remaining outside the United States and that this Court erred in concluding that the Government had met its burden of demonstrating that Mr. Sbeih declined to reenter the United States to avoid criminal prosecution.

On August 24, 2017, the Sixth Circuit Court of Appeals issued an Opinion vacating this Court's decision and remanding the case for further proceedings. (Docket #174.) The Sixth Circuit held that disentitlement is appropriate under Section 2466 whenever a claimant fails to enter or reenter the United States with the intention of avoiding prosecution, regardless of any additional purposes the claimant may have for remaining outside the United States. However, the Sixth Circuit found that in Mr. Sbeih's case, the record was insufficient to allow it to conclude that the Government met its burden of proving that Mr. Sbeih was not returning to the United States in order to avoid prosecution. The Sixth Circuit stated:

> Because of the sparsity of the district court's record, it is not clear that the government has satisfied its burden of showing that Sbeih was staying outside the United States in order to avoid prosecution. As noted previously, many of the relevant conversations between the attorneys and the district court were conducted off the record, and thus we have no way of knowing to what extent Sbeih refuted

> the government's allegations regarding his intent to evade criminal proceedings. Furthermore, we have no way to determine whether Sbeih has a justifiable reason for returning to the United States, and would therefore be entitled to pursue his legal rights in this civil forfeiture matter while remaining in Israel, given that it is unclear what efforts the government made to counter Sbeih's allegations or even if such evidence would be available. We therefore conclude that, based on the record as it has been presented to the Court, the district court committed clear error in finding that the evidence was sufficient to establish that Sbeih had the specific intent of staying in Israel to avoid prosecution.

(Docket #174 at p. 14.)

### III. Proceedings Following Remand.

On January 9, 2018, this Court held a status conference to address the decision of the Court of Appeals. An evidentiary hearing was set for January 31, 2018. (Docket #184.) The evidentiary hearing was ultimately continued until August 30, 2019, after numerous requests for continuance were made by the Parties. (Docket #s 186, 189, 193, 194, 197, 199, and 200.)

On June 27, 2019, the Government filed a "Notice of Certified Record with Certified Translation" with this Court, attaching an official Extract from the Population Registry, Trip Details Report and Certificates from the State of Israel, Ministry of the Interior – signed, stamped and sealed – indicating that Mr. Sbeih petitioned for a permanent resident visa in Israel on May 25, 2010 and, that on November 28, 2016, Mr. Sbeih's status in Israel was changed to permanent resident. (Docket #201.) The documentation shows that after his status was changed to permanent resident, Mr. Sbeih traveled outside the State of Israel on May 2, 2017 and returned on May 10, 2017; on June 17, 2018 and returned on June 23, 2018; on March 2, 2019 and returned on March 4, 2019; and, on April 25, 2019, returning on April 28, 2019.

On August 25, 2019, Mr. Sbeih filed a Motion to Continue the August 30, 2019 evidentiary hearing. (Docket #207.) On August 30, 2019, Counsel for both Parties appeared

before the Court for a status conference, on the record, and Mr. Sbeih's Motion to Continue was addressed. (Docket #208.)

Counsel for Mr. Sbeih, Jorge Pla, acknowledged that Mr. Sbeih had, in fact, been granted permanent resident status in Israel on November 28, 2016. (Docket #213, Transcript of Proceedings, at p. 2.) Mr. Pla acknowledged that Mr. Sbeih has traveled outside the State of Israel to nearby countries for vacation with his family on several occasions since his permanent resident status was approved, but maintained Mr. Sbeih is unable return to the United States. (Id. at pp. 6-7.) Without providing any documentation or citing any supporting law, and failing to have his expert available to testify, Mr. Pla asserted that Mr. Sbeih has not returned to the United States because if he were to return and be incarcerated, Mr. Sbeih's extended absence would serve as a basis for Israel to revoke his permanent resident status, thereby jeopardizing the residency application of his wife and children, which was denied and is currently on appeal. (Id. at pp. 7-8.) Mr. Pla stated as follows:

> What I'm told is – and as I represented to the Government on numerous occasions – Mr. Sbeih has the opportunity to come here and travel back, and if the United States government allowed him to come here and plea and go back to Israel, he'd be glad to do it.
>
> **But the issue is he would likely be arrested and he would not be allowed to leave because the United States government would argue that he poses a risk of flight since he's been in Israel now since 2008.**

(Id. at p. 3 (emphasis added).)

Mr. Pla stated that Mr. Sbeih was told by his attorney that the residency appeal of his wife and children should be concluded by February or March 2020. (Id.) Mr. Pla represented to the Court that it is Mr. Sbeih's intent to return once the appeal of his family's application for Israeli residency is complete. (Id. at p. 9.)

The Court granted Mr. Sbeih's Motion, continuing the evidentiary hearing until September 27, 2019. The Court questioned Mr. Sbeih's failure to return to the United States now that the issue of his own Israeli residency status – the stated reason for his failure to return to the United States throughout the pendency of this matter – had been resolved. The Court also noted its displeasure with the fact that Mr. Pla was not prepared with his expert witness.[1] (Id. at p. 12-14.)

The Government filed an Evidentiary Hearing Memorandum on September 25, 2019, referencing the Notice of Certified Record with Certified Translations provided by the Ministry of the Interior of the State of Israel. (Docket #214) The Government argues that because his residency issues have been resolved, Mr. Sbeih's excuse for not reentering the United States no longer exists. The Government asserts that even if Mr. Sbeih may have additional family-related reasons to remain in Israel, statements made by Mr. Pla prove that Mr. Sbeih is making "'a conscious choice not to enter or reenter the United States to face the criminal charges' pending against him and his intent in not reentering the United States is to avoid arrest and prosecution." *United States v. $525,695.24 Seized From JPMorgan*, 869 F.3d 412, 417 (6th Cir 2017)(citing *Collazos v. United States*, 368 F.3d 190, 201 (2d Cir. 2004)).

On September 27, 2019, the evidentiary hearing proceeded as planned. The Government called Steven Moluse, a Diversion Investigator with the United States Drug Enforcement

---

[1] At the close of proceedings on August 30, 2019, the Government requested that Mr. Pla notify the Government of any objections to the "Notice of Certified Record with Certified Translation" filed on June 27, 2019. Mr. Pla indicated he would not stipulate to the admission of the documents; would not confirm whether he would be objecting to the translation; and, indicated he would address the matter at the September 27, 2019 evidentiary hearing.

Administration, to testify. Mr. Moluse testified regarding the arrest warrant that was issued in June 2014 for Mr. Sbeih; indicated that Mr. Sbeih is currently listed as a fugitive and is not in the United States; confirmed that there is a forfeiture provision in Mr. Sbeih's criminal indictment; and, confirmed that the assets listed in the forfeiture provision are the subject matter of the Civil Forfeiture Complaint currently before the Court. (September 27, 2019 Hearing Transcript at pp. 1-3.)

Mr. Moluse testified that beginning in January 2018, through a series of emails, he "reached out to a DEA intel analyst . . . that handles Jerusalem because it was [his] understanding that [Mr. Sbeih] was in Jerusalem or in east Jerusalem." (Id. at p. 4.) Mr. Moluse made "contact with a Mr. Gabriel Bitton who is with Israel's national police and he's the attache for North America and he was able to provide some information with regard to the status of Mr. Sbeih." (Id.) Mr. Moluse testified that through Mr. Bitton, he learned that Mr. Sbeih had an Israeli ID number and had traveled outside Israel on several occasions. (Id.) Subsequently, Mr. Moluse received information that confirmed that on November 28, 2016, Mr. Sbeih's citizenship status had changed to that of a permanent resident of Israel. (Id. at p. 5.) Mr. Moluse testified that in order to obtain official documentation of Mr. Sbeih's citizenship status from Israel, he filed a request through a Mutual Legal Aid Treaty through the United States Attorney's Office. (Id.) The Government had Mr. Moluse identify Government's Exhibit 1, an excerpt from the Israeli Population Registry written in Hebrew, and Government's Exhibit 2, an English translation of the excerpt, both of which were Certified. (Id.) Mr. Moluse testified that he was told that Mr. Sbeih has the ability to travel outside the State of Israel and has done so on several occasions, as identified in the Israeli documents. (Id. at p. 6.)

On cross-examination of Mr. Moluse,[2] Mr. Pla challenged the admissibility of Governments' Exhibits 1 and 2, arguing that the Certification was insufficient because the documents did not included a raised seal and were based on hearsay.[3] Mr. Moluse responded to the questions posed by Mr. Pla, indicating that he had researched Mr. Sbeih's residency status; confirmed that Mr. Sbeih had applied for Israeli residency in 2010 and that it took 6 years for Mr. Sbeih to obtain Permanent Resident Status; and, that he was never made aware of any outstanding residency requirements regarding Mr. Sbeih's family. (Id. at pp. 9-11.)

Mr. Pla responded to questions posed by the Court, indicating that Mr. Sbeih's wife and children were denied permanent resident status in Israel; that their residency petition is currently on appeal; and, that prior to the resolution of the family's residency petition, Mr. Sbeih cannot travel. (Id. at pp. 14-15.) Mr. Pla indicated that Mr. Sbeih would be "able to travel here one way or the other after [March 31, 2020] because his family's petition should be resolved in February or March of next year, and he has maintained all along that he would come back to the United

---

[2] On June 28, 2019, Mr. Sbeih was ordered to appear at the August 1, 2019, evidentiary hearing, which was continued to August 30, 2019. On August 30, 2019, the evidentiary hearing was again continued and, on September 3, 2019, the Court ordered Mr. Sbeih to attend the rescheduled hearing on September 27, 2019. Prior to his cross-examination of Mr. Moluse, Mr. Pla objected to the Court "allowing 30 days for Mr. Sbeih to travel from Israel to the United States" as "wholly inadequate." Mr. Pla stated, "he was unable to appear at this hearing." Likewise, Mr. Pla objected to allowing 30 days for Mr. Sbeih's expert, Mr. Lior Eisenfeld, to travel from Israel to the United States, arguing 30 days was "wholly inadequate and he's unable to appear on such short notice."

[3] Despite Mr. Pla's challenges to the admissibility of the Israeli documents, Mr. Pla did not appear to challenge the truth of the relevant information set forth therein, including the fact that Mr. Sbeih petitioned for a permanent residency in Israel on May 25, 2010; that Mr. Sbeih's status was legally changed to permanent resident on November 28, 2016; and, that Mr. Sbeih traveled outside of Israel on four occasions thereafter.

States and address the allegations against him once the residency requirements are resolved." (Id. at p. 14.) Mr. Pla stated, "he is willing to come here in April and address these matters." (Id. at p. 15.) Without citing any supporting law, expert testimony, or any other evidence, Mr. Pla asserted that although Mr. Sbeih's has obtained permanent residency, he can only leave Israel for short periods of time. (Id. at pp. 15-17.) Mr. Pla indicated his expert, Mr. Eisenfeld, could testify to the same, but that "30 days is not enough time for him to arrange his travels to be here." The Court reminded Mr. Pla that he had known for months that an evidentiary hearing was scheduled. (Id. at p. 16.)

In closing, the Government quoted the Joint Proposed Stipulation dated August 17, 2018 (Docket #190), which reads in part: "At all relevant times following the issuance of an arrest warrant on his related criminal case, Sbeih Sbeih has maintained that his failure to return to the United States is due to his ability to reobtain his resident status in East Jerusalem. Sbeih Sbeih has consistently maintained in pleadings and through counsel that he is engaged in legal proceedings related to his legal status as a resident of East Jerusalem." The Government concluded by noting that the Joint Proposed Stipulation only references Mr. Sbeih's residency petition, not that of his family. (Id. at p. 18.)

IV. Discussion.

The Court's May 12, 2015 Order granting the Government's Motion to Strike as to Mr. Sbeih based on fugitive disentitlement was issued after a thorough review of the Briefs submitted by the Parties and the entire record in this case, as well as the lengthy conversations that occurred between the Parties and the Court during status conferences that were not transcribed. Mr. Sbeih consistently represented to the Government and the Court that he was not returning to the United

States to face the charges against him because he feared traveling to the United States would jeopardize his residency status in Israel and prevent him from returning to Israel. In briefing, Mr. Sbeih asked the Court to "deny disentitlement until the resolution of Mr. Sbeih's legal proceedings regarding his residency in Israel." Mr. Sbeih indicated he would be able to return to the United States to face the charges against him when his residency issues in Israel were resolved.

As set forth above, the Sixth Circuit remanded this case to develop the record with regard to the fifth element of the *Salti* test – specifically, to address the question of whether Mr. Sbeih deliberately avoided prosecution by declining to reenter the United States. The Certified Record with Certified Translation filed by the Government establishes that on November 28, 2016, Mr. Sbeih's residency status in Israel was in fact changed to permanent resident, thereby allowing him to travel outside of the Country. Mr. Sbeih has in fact traveled outside of Israel on multiple occasions since November 28, 2016, and almost three years have passed, but he has not returned to the United States.

During the August 30, 2019 status conference, Mr. Pla stated in Court and on the record that Mr. Sbeih is not returning over concern that "**he would likely be arrested and he would not be allowed to leave.**" Mr. Pla represented to the Court that Mr. Sbeih's concern is now that his arrest and probable detention in the United States would place his permanent residency in jeopardy and, in turn, might impact the ability of his wife and children to achieve permanent residency in Israel. Mr. Sbeih has presented no evidence, expert or otherwise, to support this claim and it would be difficult to imagine a scenario in any criminal case that would not negatively impact a defendant or his family in some way. The Court is not required to prolong

resolution of this matter indefinitely based on speculation and supposition that Mr. Sbeih's return to the United States may or may not negatively impact his family or some other aspect of his life.

**V.     Conclusion.**

Mr. Sbeih's asserted reason for not returning to the United States is no longer an issue, as he was granted a permanent residence visa in Israel almost 3 years ago. Mr. Sbeih consistently maintained he would return to the United States once *his* residency petition was resolved, but he has not done so.   Mr. Pla represented to the Court that Mr. Sbeih has not returned to the United States over concern that "he would likely be arrested and he would not be allowed to leave." Accordingly, the Court finds that Mr. Sbeih has deliberately avoided prosecution by failing to reenter the United States.  The Government's Motion to Strike Claims Pursuant to the Fugitive Disentitlement Statute as to Sbeih Sbeih (Docket #130) is hereby GRANTED.

IT IS SO ORDERED.

    s/Donald C. Nugent  
DONALD C. NUGENT  
Senior United States District Judge

DATED: October 30, 2019